UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | : Criminal No. 21-CR-40 |
| | : |
| DAVID LEE JUDD, | : |
| | : |
| Defendant. | : |

**GOVERNMENT'S
SUPPLEMENTAL MEMORANDUM
IN SUPPORT OF PRE-TRIAL DETENTION**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this supplemental memorandum in support of its oral motion that the Defendant, David Lee Judd, be detained pending trial.

The government respectfully requests that the following points and authorities, as well as any other facts, arguments and authorities presented at the detention hearing, be considered in the Court's determination regarding pre-trial detention.

**ARGUMENT**

I. **Because 18 U.S.C. § 111(b) Is a Crime of Violence, the Government May Seek Detention Here.**

The government may seek detention under the Bail Reform Act if the case involves any of an enumerated set of offenses, including a crime of violence. 18 U.S.C. § 3142(f)(1). Then, after a detention hearing, the "judicial officer shall order the pretrial release of the [defendant] … unless the judicial officer determines that such release… will endanger the safety of any other

1

person or the community." 18 U.S.C. § 3142(b), (e)(1).  Thus the threshold question, is whether the Defendant is charged with a crime of violence.  Because Judd has been indicted for a violation of 18 U.S.C. § 111(b), which is a crime of violence, that threshold is met without additional analysis being required.

In determining whether the offense qualifies as a crime of violence, the court must look to the elements of the offense, not the real-world conduct.  *See United States v. Singleton*, 182 F.3d 7, 12 (D.C. Cir. 1999) ("[W]e conclude that § 3142(f) contemplates that offenses eligible for pretrial detention hearings are ascertainable categorically by reference to their elements, either because these elements entail the use of violence, see § 3156(a)(4)(A), or the risk of violence, see § 3156(a)(4)(B).")  Multiple circuits across the country have determined that violations of 18 U.S.C. § 111(b) qualify as a crime of violence.  *See, e.g.*, *Gray v. United States*, 980 F. 3d 264, 265 (2nd Cir. 2020) ("The question presented is whether assaulting a federal officer under 18 U.S.C. § 111(b) is categorically a 'crime of violence.'  We join six other courts of appeals in holding that it is.").  As such, Judd qualifies for detention under 18 U.S.C. § 3142(f)(1)(A).

  II. **<u>A Firework Lit and Thrown at Law Enforcement Officers Inside a Crowded Small Tunnel Is a Dangerous Weapon Even If the Firework Malfunctions.</u>**

Judd seeks to sidestep this analysis by arguing that a firework used in this context cannot qualify as a "dangerous weapon" for the purposes of demonstrating a violation of 18 U.S.C. § 111(b).  Again courts are required to perform a categorical analysis based on the elements of the charged crime, not the specific facts of the underlying case, *Singleton*, 182 F.3d at 12.  However, even were this the proper analysis or were the court simply to analyze the issue as it

2

relates to determining the weight of the evidence, a firework lit and thrown at law enforcement inside a small crowded tunnel clearly qualifies as a dangerous weapon under 18 U.S.C. § 111(b), even if the firework malfunctions and does not explode.

Specifically, 18 U.S.C. § 111(b) penalizes the use of "a deadly or dangerous weapon (including a weapon intended to cause death or danger but that fails to do so by reason of a defective component)." "To convict a defendant of the § 111(b) offense, the jury must find (inter alia) that he forcibly assaulted (or forcibly resisted, etc.) a federal officer, that he did so intentionally, that he used a dangerous weapon in the commission of that act, and that he used the weapon intentionally." *United States v. Arrington*, 309 F.3d 40, 46 (D.C. Cir. 2002). Attempted assaults of course qualify. *See United States v. Duran*, 96 F.3d 1495, 1509 (D.C. Cir. 1996). "Courts interpreting § 111 have adopted the commonly accepted definition of a deadly or dangerous weapon . . .: any object which, as used or attempted to be used, may endanger the life of or inflict great bodily harm on a person." *United States v. Anchrum*, 590 F.3d 795, 801 (9th Cir. 2009). "Inherently dangerous" weapons are those that are "obviously dangerous" such as "guns, knives, and the like." *United States v. Riggins,* 40 F.3d 1055, 1057 (9th Cir. 1994)). Where the object is not inherently dangerous, the key questions are whether the item is "capable of causing serious bodily injury or death to another person" and whether the object was "used in a deadly or dangerous manner." *Arrington*, 309 F.3d at 45.[1]

---

[1] Dangerous weapon is not defined in 18 U.S.C. § 111(b). However, other courts have defined it as described above and the D.C. Circuit put forth a similar definition in *Arrington*, which is the proper basis for an analysis in this case. Defendant cites *United States v. Broadie*, 452 F.3d 875, 882 (D.C. Cir. 2006), regarding what qualifies as a dangerous weapon. However, *Broadie* focused on determining whether there was "probable cause to believe Broadie was carrying a dangerous weapon ("CDW") in violation of D.C. Code § 22-4504(a)," and did not analyze the term as it is used in 18 U.S.C. § 111(b). Thus, the Defendant's reliance on *Broadie*, which analyzed a different statutory scheme, and thus focused on whether "the surrounding circumstances indicate that an object capable of causing great bodily injury is likely in fact to be so used" is inapplicable here. Indeed, unlike what *Broadie* determined in the context of a CDW violation, *Arrington* concluded that there is no requirement that the defendant

First, a firework, which even as the Defendant defines it involves "an explosive," Dkt 55 at 5, is inherently dangerous. They can kill and injure people just like guns and knives. As noted in a recent study by the U.S. Consumer Product Safety Commission, there were 12 firework-related deaths and 10,000 firework-related injuries treated in U.S. hospital emergency departments in 2019. *See* "Fireworks-Related Deaths, Emergency Department-Treated Injuries, and Enforcement Activities During 2019," 2019 Fireworks Annual Report, U.S. Consumer Product Safety Commission, *available at* [https://www.cpsc.gov/Safety-Education/Safety-Education-Centers/Fireworks](https://www.cpsc.gov/Safety-Education/Safety-Education-Centers/Fireworks), last visited 5/11/21.

Second, even assuming that it is not inherently dangerous, a firework lit and thrown at law enforcement inside of a small and crowded tunnel certainly qualifies as using a firework in a manner "capable of causing serious bodily injury or death to another person." Despite the Defendant's effort to paint his actions as merely celebratory in nature by claiming it was used as a "standard, noise-producing instrument," Dkt 55 at 5, there is no doubt about what he did here. He did not bang a drum, blow on a kazoo, or otherwise just try to make a celebratory noise. He threw a firecracker at law enforcement officers and lucked out when it malfunctioned.

Specifically, as captured on video, around 2:56 p.m., Judd first joined a group of rioters in the Lower West Terrace tunnel as they pushed in unison against law enforcement guarding the doors. (This is the basis for one of his indicted counts for violating 18 U.S.C. § 111(a).) Then, he went out into the crowd near the tunnel entrance and yelled "shield wall" into the crowd outside the tunnel. Then, after helping to pass the stolen shields to rioters inside the tunnel (shields later used to squash the officers trying to guard the doors) -- he walked into the crowd in

---

"intentionally use the object *as a weapon*" by explaining that such an "unexpressed" element *"is certainly not suggested by the language of § 111(b)."* 309 F.3d at 46 (emphasis added).

4

the small tunnel, lit a firecracker, and threw it at the law enforcement officers trying to keep rioters from entering the Capitol through the Lower West Terrace doors.  (He then hung around the area, cheered others on as they assaulted officers, and finally once again joined in on another effort to push past law enforcement guarding the Capitol around 4:15 p.m., which is the basis for one of his other indicted counts for violating 18 U.S.C. § 111(a).)

It bears noting how small and crowded this tunnel was.  As evidenced in the still shot from the surveillance video right after he lit the firecracker, the tunnel is so small it does not appear to be wide enough to fit more than 10 people standing shoulder to shoulder.  (Judd is indicated by the green box.)



Despite its small size, it was full of people, both other rioters, who are visible in the still shot above, and the law enforcement officers that were standing underneath the camera capturing Judd's actions.  As visible in the still shot below from YouTube Video 1, around 3:07 p.m. where what appears to be the lit firecracker thrown by Judd is visible in the top left hand corner (as marked by an added red box), law enforcement officers were packed shoulder to shoulder in

the area where Judd threw the firecracker.  (The surveillance camera capturing Judd throwing the firecracker is located directly above the first set of doors visible in this still shot.)



It is not clear why the firecracker failed to explode, but a "defective component" cannot take it out of the statutory definition of a dangerous weapon for the purposes of 18 U.S.C. § 111(b).  Just like someone who points an unloaded gun at someone cannot claim the gun itself was not dangerous, neither can the defendant claim that lighting and throwing a firecracker directly at law enforcement officers packed into a small crowded tunnel is not dangerous just because the firecracker fortuitously did not explode.  Certainly, those law enforcement officers having the firecracker thrown at them had no warning it would have so little of an impact.  *See United States v. Hamrick*, 43 F.3d 877, 882 (4th Cir. 1995) (Under 111(b), "[a]n assault with a dysfunctional bomb poses the same or similar dangers and gives rise to the same kind of harms as an assault with an unloaded gun. Even a dysfunctional bomb engenders in the assault victims the fear of bodily injury beyond that instilled by a simple assault.").

6

Finally, the Defendant claims that the use of the firework "produced so little notice, or reaction" that it cannot reasonably be characterized as dangerous. Dkt. 55 at 6. Contrary to his claims, multiple people clearly did react and even other rioters seemed shocked that he would be willing to light and throw a firecracker in such an small and crowded space. First, as noted in the earlier memorandum, an unidentified member of the crowd next to Judd as he lit and threw the firecracker was so shocked by his behavior that he immediately yelled: "You going to do that and run away! What the fuck." When asked what the individual did by the person taking the video, the unidentified member of the crowd stated: "He threw a firecracker, a big giant, what the …." Similarly, in watching the surveillance footage, rioters in front of and next to Judd, in addition to the one that made the comment captured on video, can be seen doing a double take after he throws the firecracker, with two nearby immediately pivoting their heads back and forth between looking at Judd and the direction where he threw the firecracker. Finally, in reviewing additional body worn camera footage, an officer in the tunnel can be heard reacting as well, yelling what sounds like "a firework!" through his gas mask and turning his head in the direction of where the firework appears to land based on the video still shot shown above. Regardless, to say the least, it was very chaotic and hectic inside of that tunnel and it makes sense why not everyone inside may have noticed a firecracker that was lit and thrown but fortuitously failed to explode. For example, in the minutes before and after Judd can be seen lighting and throwing the firework, the following is occurring based on a review of body worn camera footage and other videos inside the tunnel: one rioter can be heard screaming "traitors" at officers at the top of his lungs, another can be heard yelling directions for the "shield wall" and talking about blocking/taking out a camera, another can be seen spraying an officer with OC spray, and finally

7

rioters can then be seen using the stolen shields to violently push against law enforcement officers guarding the doors.  Given all that was going on, the fact that there was not even more reaction to his failed attempt at setting off a firework in a crowded tunnel changes nothing.  He still used a firework in a deadly and dangerous manner and his attempt to assault the law enforcement officers with that firecracker is still a violation of 18 U.S.C. § 111(b).

## CONCLUSION

WHEREFORE, the United States respectfully requests that the Court grant the government's motion to detain the Defendant pending trial.

Respectfully submitted,

CHANNING D. PHILLIPS
Acting United States Attorney
D.C. Bar No. 415793

By: /s/
MELISSA JACKSON
Assistant United States Attorney
D.C Bar Number 996787
United States Attorney's Office
555 Fourth Street, N.W.
Washington, D.C. 20530
Telephone: (202) 815-8585
Email: Melissa.Jackson@USDOJ.GOV

9