**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> v. <br><br> **PATRICK EDWARD MCCAUGHEY, III,** ***et al.***, <br><br> Defendants. | Case No. 1:21-cr-00040 (TNM) |

## MEMORANDUM ORDER

This Capitol breach case began with an indictment against one Defendant. *See* ECF No. 5. Over multiple superseding indictments, the Government has added other Defendants—ultimately, nine of them. According to the Government, all Defendants infiltrated the Lower West Terrace of the Capitol and then battled with police blocking their entry. Their actions varied. Some Defendants allegedly struck police officers with objects. Others pushed in a large group against a police line, and still others encouraged those efforts. There is no allegation that Defendants knew each other beforehand. But the Government does allege that each Defendant joined, at various times, the group that converged on the Terrace and ultimately swarmed the tunnel.

The Indictment charges each Defendant with a different mix of offenses. *See generally* Fifth Supers. Indictment (Indictment), ECF No. 179. For example, multiple Defendants face charges of assaulting federal officers. Others face robbery charges. Yet despite the different charges, the Indictment charges every Defendant with Civil Disorder, in violation of 18 U.S.C.

§ 231, *see id.* at 17, and Obstruction of an Official Proceeding, in violation of 18 U.S.C. § 1512, *see id.* at 16.[1]

Before the Court are motions from Defendants David Judd, Steven Cappuccio, and Federico Klein to sever their trials from the group.[2]  *See* David Judd Mot. to Sever, ECF No. 206 (Judd Mot.); Steven Cappuccio Mot. to Sever, ECF No. 207 (Cappuccio Mot.); Federico Klein Mot. to Sever, ECF No. 249 (Klein Mot.).  Upon consideration of these motions and the Government's opposition, *see* Opp'n to Mots. to Sever, ECF No. 277 (Opp'n), the Court denies the motions.  As alleged by the Government, Defendants acted in concert by battling police blocking a doorway to the Capitol to achieve a common goal: obstruction of the certification of the Electoral College count.  It is appropriate for them to be tried together.

## I.

"There is a preference in the federal system for joint trials of defendants who are indicted together."  *Zafiro v. United States*, 506 U.S. 534, 537 (1993).  Two Federal Rules of Criminal Procedure govern the propriety of a joint trial.  The movants make arguments under both.

Rule 8(b) permits joinder of defendants in the same indictment when "they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses."  Fed. R. Cr. P. 8(b).  Joinder is appropriate if there is "a logical relationship between the acts or transactions."  *United States v. Perry*, 731 F.2d 985, 990 (D.C. Cir. 1984).  The Court reviews the indictment and the Government's pretrial evidence to evaluate that relationship.  *See United States v. Carson*, 455 F.3d 336, 372 (D.C. Cir. 2006).

---

[1]  All page citations refer to the pagination generated by the Court's CM/ECF system.

[2]  The Court split Defendants into two groups for trial.  *See* Minute Entry, Dec. 17, 2021.  The three movants are in Group 2, along with Defendants Christopher Quaglin and Geoffrey Sills.  *See id.*

Even if joinder is proper under Rule 8(b), however, Rule 14(a) allows the Court to sever a defendant's trial if joinder "appears to prejudice a defendant or the government."  Fed. R. Cr. P. 14(a).  Prejudice arises where there is "a serious risk that a joint trial [will] compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."  *Zafiro*, 506 U.S. at 539.  But as the Rule's permissive language suggests, "severance is not required even if prejudice is shown."  *United States v. Tucker*, 12 F.4th 804, 825 (D.C. Cir. 2021) (cleaned up).

The tailoring of appropriate relief is instead left "to the district court's sound discretion." *Zafiro*, 506 U.S. at 539.   Often, "less drastic measures, such as limiting instructions, [ ] will suffice to cure any risk of prejudice."  *Id.*  For these reasons, Defendants seeking severance under Rule 14 bear a "heavy burden," *United States v. Williams*, 507 F. Supp. 3d 181, 196 (D.D.C. 2020) (cleaned up), and courts "sparingly" grant motions under the Rule.  *Tucker*, 12 F.4th at 825 (cleaned up).

## II.

### A.

Judd and Klein argue that joinder of their alleged offenses violates Rule 8(b) because those offenses have no "logical nexus" with the offenses of their co-defendants.  Judd Mot. at 5. For support, they note that the joined Defendants "did not know one another prior to January 6," "did not travel to the Capitol together," and "are not associated with the same group or organization."  Judd Reply at 7, ECF No. 285.  Nor has the Government charged them with conspiracy.  *See* Judd Mot. at 4.  From these facts, Judd and Klein conclude that their actions "were wholly separate and distinct" from their co-defendants, Klein Mot. at 6, without a "single, common thread tying" them all together, *id.* at 9.

The Court disagrees.  Defendants' acts have a clear "logical relationship" based on the facts alleged in the Indictment.  *Perry*, 731 F.2d at 990.  Start with the obvious.  Defendants allegedly battled police officers in the same location and at the same time.  But the Indictment and pretrial evidence show commonality beyond mere spatial and temporal proximity.  The Indictment charges every Defendant with furthering a "civil disorder," which is defined as any public disturbance "involving acts of violence by assemblages of three or more persons."  18 U.S.C. § 232(1).  In other words, one cannot advance or engage in a civil disorder alone.  That activity, like a conspiracy, requires multiple people.[3]  Defendants worked together.  It is appropriate for them to be tried together.

The factual allegations here show their concerted activity.  Defendants joined a mob that collectively moved against police on the Terrace and in the tunnel.  Judd and Klein then joined a group of rioters who pushed against officers lined across the tunnel.  *See* Opp'n at 8.  In the moment, both men also encouraged collective action.  Klein yelled "we need more people" as he prevented an officer from shutting a door in the tunnel.  *Id.*  And Judd urged others to pass riot shields forward to construct a "shield wall" against police.  *Id.* at 9.  They both then engaged in their own acts of violence—Judd threw a firecracker at police*, see id.*, and Klein wielded a riot shield to push against police, *see id.* at 10.  Other Defendants individually battered police in similar ways and assisted nearby rioters by "using their collective force" to push against the police line in the tunnel.  *Id.* at 10.

Based on those allegations, the actions of Judd and Klein were not "separate and distinct" from their co-defendants.  Klein Mot. at 6.  They worked collectively "in the same

---

[3]  Judd in particular highlights the lack of a conspiracy charge.  *See* Judd Reply at 8–9.  But the lack of a conspiracy charge does not automatically make joinder improper.  *See United States v. Gbemisola*, 225 F.3d 753, 760 (D.C. Cir. 2000).

series of acts" to overwhelm police and to enter the Capitol.  Fed. R. Civ. P. 8(b).  And their individual acts of violence contributed to that collective effort.  More, all Defendants face an obstruction charge, which alleges that they undertook these actions with corrupt intent to obstruct an official proceeding.  *See* 18 U.S.C. § 1512(c).  So the Government has alleged not only collective action but also a shared motive for that action.

Those allegations distinguish this case from *United States v. Jackson*, 562 F.2d 789 (D.C. Cir. 1977).  There, one man emerged from the passenger side of a car and threatened two women at gunpoint.  *See id.* at 791.  He ordered them to a secluded area, where he tore some of their clothing.  *See id.*  The women managed to escape, and the assailant fled.  *See id.*  "A short while later," a man from inside the passenger side of the same car snatched a different woman's purse out of her hands.  *Id.*  Police ultimately found the two men in the car and charged both with assault with intent to rape and robbery.  *See id.* at 792.  The D.C. Circuit overturned joinder of the robbery charge with the rape charge because the crimes were "apparently unconnected," with "little or no indication of how or why defendants moved from one to the other."  *Id.* at 795.  The Circuit also noted that the different motives for each crime underlined their "dissimilarity."  *Id.* at 794, n.4.

In contrast, the Government here has alleged the same motive undergirding Defendants' alleged conduct.  And the pretrial evidence shows why every Defendant "moved from one" offense to another.  *Id.* at 795.  They sought to overrun police and enter the Capitol, and their acts of violence fed off one another to achieve that shared goal.  Indeed, any reader of *Lord of the Flies* knows that mob mentality leads to collective violence well beyond what individuals would do by themselves.  *Accord Whitley v. Albers*, 475 U.S. 312, 323–24 (1986) (acknowledging that any reaction of prison inmates during prison riot might lead to violence so

officer did not violate Eight Amendment by shooting in the knee one inmate that ran at him during the riot).

Thus, the actions of Judd and Klein and the actions of their co-defendants were "connected together," *Perry*, 731 F.2d at 990 (cleaned up), and were "in the same series of acts," Fed. R. Cr. P. 8(b). *Cf. United States v. Slatten*, 865 F.3d 767. 788 (D.C. Cir. 2017) (noting that a turret gunner who fired into an Iraqi public square "participated in the 'same series of acts or transactions' that gave rise to the prosecution" of multiple military contractors who also fired and killed bystanders (quoting Fed. R. Cr. P. 8(b))).

Considerations of judicial efficiency also support a joint trial here.  In the event of severed trials, Government witnesses would need to testify in front of multiple juries.  Such duplication of testimony will further cram a court docket already full of January 6 trials.  More, the charges in this case require jury findings applicable to all Defendants, such as whether they engaged in civil disorder or acted with corrupt intent to obstruct an official proceeding.  Much of the evidence will presumably focus on activities at the Lower West Terrace that would likely be directly relevant as to each Defendant but not clearly relevant as to other January 6 defendants. And as the Government correctly points out, many of the individual charges require a finding— applicable to all Defendants—that the Capitol was a "restricted area" on January 6.  Thus, a severed trial would create a burden of duplicating trials and reproducing evidence.  When added to the other commonalities between the Defendants, that burden "is a proper consideration" in the Court's decision "to deny severance."  *United States v. Bridgeman*, 523 F.2d 1099, 1107 (D.C. Cir. 1975).

The Court holds that the Government properly joined their alleged offenses with those of the other co-defendants.

**B.**

The Court turns next to the arguments under Rule 14.  All three movants assert that a jury will prejudice them based on the conduct of their co-defendants.  According to this argument, their conduct "stands in stark contrast" with what other Defendants did, Cappuccio Mot. at 7, including spraying officers with chemicals and striking officers with batons, *see* Klein Mot. at 10.  The movants worry that the jury's revulsion at those actions will spill over into the jury's consideration of the movants' conduct.  They might be "deeply prejudiced by association" with allegedly more violent Defendants.  Judd Mot. at 14.

The movants are right that a risk of spillover prejudice—"the risk the jury would use evidence of one defendant's guilt against another"—can support severance.  *Tucker*, 12 F.4th at 825 (cleaned up).  But that risk supports severance only "[w]hen the evidence against one or more defendants is far more damaging than the evidence against another defendant."  *United States v. Wilson*, 605 F.3d 985, 1018 (D.C. Cir. 2010) (cleaned up).  "Absent a dramatic disparity" of that evidence, courts deal best with prejudice through "instructions to the jury to give individual consideration to each defendant."  *United States v. Moore*, 651 F.3d 30, 95 (D.C. Cir. 2011) (cleaned up).

The Court finds no dramatic disparity of evidence here.  For one thing, the movants' argument rests on a premise that their conduct was appreciably different from the conduct of their co-defendants.  The Government's evidence says otherwise.  Cappuccio allegedly yanked a gas mask off an officer's face, stole the officer's baton, and struck him with it.  *See* Opp'n at 9.  Judd allegedly threw a firecracker at police and joined the mob pushing them.  *See id.* at 8–9.

And Klein "pushed" an officer on the terrace before using riot shields to "battle" police. *Id.* at 7, 9.[4]

True, others might have engaged in more instances of violence. But the movants were hardly wallflowers during the events of January 6. According to the Government's allegations, they contributed substantially and independently to the violence of that day. *See Moore*, 651 F.3d at 96 (affirming denial of severance when Government presented "substantial and independent" evidence of movants' role in offense, even when those defendants "committed fewer crimes" and "had a less extensive role" than their co-defendants).

More, the jury here can "reasonably compartmentalize the evidence introduced against each individual defendant." *United States v. Celis*, 608 F.3d 818, 844 (D.C. Cir. 2010) (cleaned up). Video cameras captured much of that day's events. Because each Defendant's actions are rendered on video, a jury need not "look beyond each defendant's own" actions to judge guilt or innocence. *Id.* at 846 (cleaned up). The risk of spillover prejudice is "minimal" in such a case, *id.*, and any remaining prejudice is best addressed through a jury instruction, not severance under Rule 14(a), *see Zafiro*, 506 U.S. at 539.[5]

---

[4] To suggest that he engaged in less violent conduct than other Defendants, Klein repeatedly cites Judge Bates's opinion denying the Government's request for pretrial detention. *See* Klein Mot. at 4 (citing and quoting *United States v. Klein*, 533 F. Supp. 3d 1 (D.D.C. 2021)). But that decision rested on a previous indictment, which charged Klein with only one count of assaulting police officers. *See* ECF No. 12, Case No. 21-cr-236 (D.D.C. Mar. 19, 2021). The current Indictment alleges six such counts against him. Given the increase in violent charges against Klein, Judge Bates's conclusions based on the prior indictment have little relevance to the current one.

[5] Cappuccio asserts that video does not capture his alleged actions. *See* Cappuccio Reply at 3, ECF No. 284. But the Government has witness testimony from the officer that he allegedly assaulted. *See* Opp'n at 9, n.4. That evidence is "substantial and independent" enough to allow a jury to compartmentalize it from the videos showing the other Defendants. *Moore*, 651 F.3d at 214.

*Kotteakos v. United States*, 328 U.S. 750 (1946), does not counsel otherwise.  There, the Supreme Court held that the Government may not charge eight separate conspiracies as one conspiracy simply because "one man participated in all" of them.  *Id.* at 773.  The Court noted that defendants in such a situation had no right "to be tried en masse for the conglomeration of distinct and separate offenses *committed by others.*"  *Id.* at 775 (emphasis added).

That is not this case.  This Indictment charges each Defendant for their own actions on January 6.  For example, Judd does not face punishment for Klein's actions, or vice versa.  The indictment in *Kotteakos* worked differently, charging 32 defendants in one count for offenses "committed by others."  *Id.*  Not so here—each Defendant faces a mix of charges unique to his alleged offenses.  In this Indictment, guilt "remains individual and personal[,] . . . not a matter of mass application," unlike the indiscriminate conspiracy charge in *Kotteakos*.  *Id.* at 772.

Finally, Cappuccio argues that a joint trial will violate his confrontation rights because introduced statements from his co-defendants "may implicate" him and those co-defendants might not testify.  Cappuccio Mot. at 6 (citing *United States v. Bruton*, 391 U.S. 123 (1968)).  But Cappuccio does not show that the Government will introduce any of those statements, or whether they implicate him.  Such bare speculation does not justify severance.  *See United States v. Diaz-Antunez*, 930 F. Supp. 2d 103, 115 (D.D.C. 2013) (denying severance where defendant "has made no proffer of . . . *Bruton* problems").

**III.**

For these reasons, the Court holds that the Government complied with Rule 8(b) as to the joinder of the Defendants and that Rule 14(a) does not require severance as to Judd, Cappuccio, and Klein.  Thus, the pending [206], [207], [249] Motions to Sever are DENIED.

**SO ORDERED**.


Dated: May 20, 2022                                    _____
                                                       TREVOR N. McFADDEN, U.S.D.J.