IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Case No.: 21-CR-40-3 (TNM)** |
| | : | |
| **v.** | : | |
| | : | |
| **DAVID JUDD,** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

### STATEMENT OF OFFENSE FOR STIPULATED TRIAL

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, David Judd, with the concurrence of his attorney, hereby submit the Elements and Statement of Facts for Stipulated Trial as to Count 34 and the lesser-included offense of 18 U.S.C. 111(a) for Count 22 of the Fifth Superseding Indictment.

**I.     Elements**

The essential elements of Assaulting, Resisting, or Impeding Certain Officers, in violation of 18 U.S.C. § 111(a)(1), each of which the government must prove the following beyond a reasonable doubt are:

1. That the defendant assaulted, resisted, opposed, impeded, intimidated, or interfered with any officer or employee of the United States or of any agency in any branch of the United States Government;

2. That the defendant did so with some use of force;

3. That the defendant did so while the officer or employee was engaged in or on account of the performance of official duties; and

4. That the assault involved physical contact with the victim or the intent to commit another

felony.

The essential elements of the offense of obstruction of an official proceeding and aiding and abetting, in violation of 18 U.S.C. § 1512(c)(2), each of which the government must prove the following beyond a reasonable doubt:

1. The defendant attempted to or did obstruct or impede an official proceeding;

2. The defendant intended to obstruct or impede the official proceeding;

3. The defendant acted knowingly, with awareness that the natural and probable effect of his conduct would be to obstruct or impede the official proceeding; and

4. The defendant acted corruptly.

The government further alleges that the defendant aided and abetted others in committing obstruction of an official proceeding. To satisfy its burden of proof in proving that the defendant aided and abetted others in committing this offense, the government must prove the following beyond a reasonable doubt:

1. Others committed obstruction of an official proceeding by committing each of the elements of the offense charged;

2. The defendant knew that obstruction of an official proceeding was going to be committed or was being committed by others;

3. The defendant performed an act or acts in furtherance of the offense;

4. The defendant knowingly performed that act or acts for the purpose of aiding, assisting, soliciting, facilitating, or encouraging others in committing the offense of obstruction of an official proceeding; and

5. The defendant did that act or acts with the intent that others commit the offense of an obstruction of an official proceeding.

II.    **Statement of Offense**

*The Attack at the U.S. Capitol on January 6, 2021*

1.    The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured twenty-four hours a day by U.S. Capitol Police (USCP). Restrictions around the Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized people with appropriate identification are allowed access inside the Capitol.

2.    On January 6, 2021, the exterior plaza of the Capitol was closed to members of the public.

3.    On January 6, 2021, a joint session of the United States Congress convened at the Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on Tuesday, November 3, 2020. The joint session is set out in the Twelfth Amendment of the Constitution of the United States and 3 U.S.C. §§ 15-18. The joint session began at approximately 1:00 PM. Shortly thereafter, by approximately 1:30 PM, the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4.    As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the Capitol. Temporary and permanent barricades, as noted above, were in place around the exterior of the Capitol, and USCP officers were present and attempting to keep the crowd away from the Capitol and the proceedings underway inside.

5.      At approximately 2:00 PM, certain individuals in the crowd forced their way through, up, and over the barricades. Officers of the USCP were forced to retreat and the crowd advanced to the exterior façade of the building. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks as required by USCP officers or other authorized security officials.

6.      At such time, the certification proceedings were still underway, and the exterior doors and windows of the Capitol were locked or otherwise secured. Members of the USCP attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 PM, individuals in the crowd forced entry into the Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the Capitol, requiring the expenditure of more than $2.7 million dollars for repairs.

7.      Shortly thereafter, at approximately 2:20 PM, members of the House of Representatives and of the Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 PM on January 6, 2021. In light of the dangerous circumstances caused by the unlawful entry to the Capitol—including the danger posed by individuals who had entered the Capitol without any security screening or weapons check—Congressional proceedings could not resume until after every unauthorized occupant had been removed from or left the Capitol, and USCP confirmed that the building was secured. The proceedings resumed at approximately 8:00 PM after the building

had been secured. Vice President Pence remained in the Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### *David Judd's Participation in the January 6, 2021, Capitol Riot*

8.      The defendant, David Judd, lives in Dallas, Texas. The defendant traveled from Texas to Washington, D.C. The purpose of the defendant's trip to Washington, D.C., was to protest Congress' certification of the Electoral College.

9.      Prior to January 6, 2021, defendant Judd's iPhone contained approximately 300 digital images of former President Donald Trump. The iPhone also contained an image with three screenshots of Tweets by the former president stating:

"Swing states that have found massive VOTER FRAUD, which is all of them, CANNOT LEGALLY CERTIFY these votes as complete & correct without committing a severely punishable crime. Everybody knows that dead people, below age people, illegal immigrants, fake signatures, prisoners,....

.....and many others voted illegally. Also, machine "glitches" (another word for FRAUD), ballot harvesting, non-resident voters, fake ballots, "stuffing the ballot box", votes for pay, roughed up Republican Poll Watchers, and sometimes even more votes than people voting, took....

....place in Detroit, Philadelphia, Milwaukee, Atlanta, Pittsburgh, and elsewhere, In all Swing State cases, there are far more votes than are necessary to win the State, end the Election itself. Therefore, VOTES CANNOT BE VERIFIED. THIS ELECTION IS UNDER PROTEST!"

10.      The defendant's iPhone also contained numerous screenshots of memes appearing to question the legitimacy of the 2020 election results, saved to the device in mid-November 2020. One image contained pictures of Supreme Court Justice Amy Coney Barrett with the text "That's a nice "win" you got there, Joe. Would be a shame if someone were to REVERSE IT." Another

image contained the text "we're being told to accept the results of an election by the same people who spent 4 years not accepting the results of an election."

11.     Prior to January 6, 2021, defendant Judd posted an advertisement on social media, asking for a ride to the Stop the Steal rally in Washington, D.C. The advertisement stated "Y'all read to be apart [sic] of History??? My name is Judd!!! I worked for the president this year in Maine, I'm a Texas Patriot and American First Supporter. If anyone has an extra spot for the ride there and place to stay, I HAVE MY LICENSE TO CARRY A FIREARM, I am a professional driver and can help with driving and funds too!! It's just me, I'm in north Dallas. Let's fight to Save this Country and Support the greatest President. Text me Judd- ###-###-5770." Subscriber records confirmed the phone number listed in the advertisement was used by defendant Judd during the relevant time period.

12.     On the morning of January 6, 2021, defendant Judd went to the Ellipse in downtown, D.C., where former President Trump was speaking at the "Stop the Steal" rally. After the rally, defendant Judd made his way to the U.S. Capitol grounds, intending to stop or prevent Congress from certifying the Electoral College vote results. Defendant Judd was wearing a backwards red "Make America Great Again" hat with a white pin, a black hoodie sweatshirt under a grey vest, and a "Trump Volunteer" ID on a lanyard.

13.     On January 6, 2021, defendant Judd joined the crowd gathering on the West Front of the U.S. Capitol grounds, and by approximately 2:43 p.m., defendant Judd climbed a set of stairs on the northwest side of the inaugural platform to reach the Lower West Terrace.

14.     From approximately 2:40 p.m., a group of law enforcement officers maintained a line at the second set of glass doors inside the tunnel leading from the inaugural platform to the entrance to the Capitol. These officers fought a group of rioters inside the tunnel, including

defendant Judd, back from the door until approximately 3:19 p.m. when they cleared the rioters from the tunnel.

15.     At approximately 2:56 p.m., defendant Judd appeared at the mouth of the tunnel, and waved other rioters into the tunnel. Defendant Judd participated in a heave-ho against the police line, throwing his body weight against other rioters in the tunnel in a rhythmic motion, against the officers guarding the Capitol building entrance.

16.     At approximately 3:06 p.m., defendant Judd stood directly outside the tunnel, receiving police riot shields from rioters inside the tunnel and passing them back to rioters out on the inaugural platform.

17.     At approximately 3:07 p.m., defendant Judd entered the tunnel, lit an object that appeared to be a firecracker, and threw it at the police line. The object landed in between the double doors at the building entrance, where at least ten law enforcement officers were fighting with other rioters to keep them out of the building. While the exact object was not recovered, the object was capable of inflicting serious bodily injury, closely resembled such an object, or was used in a manner that created the impression the object was such an instrument.

18.     At approximately 3:19 p.m., law enforcement was able to clear the tunnel of rioters and set up a new police line at the mouth of the tunnel. At approximately 4:17 p.m., defendant Judd joined other rioters on the Lower West Terrace inaugural platform pushing against the newly-established police line, causing the officers to lose ground back into the tunnel. Subsequently, defendant Judd left the grounds of the U.S. Capitol.

19.     On January 10, 2021, defendant Judd accessed the account settings feature of Facebook on his iPhone at 11:19 a.m. Defendant Judd then searched the terms "how completely

delete Facebook" in the Safari application on his iPhone at 11:20 a.m.  Finally, defendant Judd accessed the Facebook "account deletion" pages at 11:21 a.m.

Without waiving any arguments set forth in Mr. Judd's Motion to Dismiss Count 34, the parties agree that if the Court finds the existence of these facts beyond a reasonable doubt, this evidence would establish each and every element of the charged offenses for Count 34, and the lesser-included offense of 18 U.S.C. 111(a) for Court 22 of the Fifth Superseding Indictment, in light of the Court's ruling on the Motion and without waiving defendant's objection to the Court's ruling.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:

KIMBERLY L. PASCHALL
Assistant United States Attorney
D.C. Bar No. 1015665

## DEFENDANT'S ACKNOWLEDGMENT

I, David Judd, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: _____ 8/23/22 _____

_____
David Judd
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 8/23/22 _____

_____
Elizabeth Mullin
Attorney for Defendant Judd

8/25/2022

Edward T Ungvarsly
Attorney for Defendant Judd